# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 22-1352V

| | |
|---|---|
| * * * * * * * * * * * * *<br>JAYNE HAGER, *<br>*<br>Petitioner, *<br>*<br>v. *<br>*<br>SECRETARY OF HEALTH *<br>AND HUMAN SERVICES, *<br>*<br>Respondent. *<br>* * * * * * * * * * * * * | Chief Special Master Corcoran<br><br><br><br><br>August 25, 2026 |

*Ramon Rodriguez, III,* Siri & Glimstad, LLP, Richmond, VA, for Petitioner.

*Ryan Pohlman Miller,* U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION GRANTING IN PART MOTION FOR ATTORNEY'S FEES AND COSTS[1]

On September 23, 2022, Jayne Hager filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, et seq.[2] (the "Vaccine Act"). Petitioner alleged that she suffered bilateral tinnitus, hearing loss, anxiety, and depression as a result of receiving influenza and pneumococcal vaccines on or about September 24, 2020. Petition ("Pet.") (ECF No. 1); Amended Pet. (ECF No. 20). On May 29, 2025, a decision awarding compensation to Petitioner was issued (ECF No. 57).

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). This means the Decision will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), each party has fourteen (14) days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access. Otherwise, the whole Decision will be available to the public in its present form.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018), omitting the statutory prefix.

Petitioner previously filed an interim fees request (ECF No. 50) ("Interim Mot.") that was not acted upon before the case's completion, and subsequently filed a second, "final" fees request (ECF No. 62) ("Final Mot.") (collectively, the "Fees Motions"), requesting in total $94,076.24 (representing $85,867.95 in fees and costs incurred by Petitioner's former counsel, Ms. Phyllis Widman, Esq., plus $8,208.29 in fees and costs incurred by Petitioner's present counsel of record, Dr. Ramon Rodriguez, Esq.). Furthermore, Petitioner filed a signed statement (ECF No. 52) representing that she incurred personal out-of-pocket expenses in the amount of $11,233.36, while represented by Ms. Widman, bringing the total requested award to **$105,309.60**. *See also* Exhibit 145 (ECF No. 62-1) (supplemental statement of Petitioner's personal costs); *but see* Interim Mot. at 23-39 (containing several images of checks and receipts related to transactions involving Widman Law Firm, LLC).

Respondent has reacted to the Fees Motions, reporting that he is satisfied that the statutory requirements for a fees award are met in this case, but deferring resolution of the amount to be awarded to my discretion. Respondent's Responses (ECF Nos. 51 & 64). Petitioner filed a reply reiterating her overall request. Petitioner's Reply (ECF No. 65).

I have reviewed the billing records submitted with Petitioner's requests and find a reduction in the amount of fees to be awarded appropriate, for the reasons set forth below.

## ANALYSIS

The Vaccine Act permits an award of reasonable attorney's fees and costs for successful claimants. Section 15(e). Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. *See Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313, 316-18 (2008). Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Id*. at 1521-22. Furthermore, the special master may reduce a fee request *sua sponte*, apart from objections raised by respondent and without providing petitioner notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (2009). A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (2011).

Petitioner "bears the burden of establishing the hours expended, the rates charged, and the expenses incurred." *Wasson v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 484 (1991). Petitioner "should present adequate proof [of the attorney's fees and costs sought] at the time of

the submission." *Id*. at 484 n.1. Petitioner's counsel "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434.

**ATTORNEY FEES**

The hourly rates requested for supporting paralegals are reasonable and consistent with prior determinations and shall be awarded. However, the rates of Ms. Widman and Dr. Rodriguez are not fully consistent with what they have been previously awarded.

For Ms. Widman, Petitioner requests $400.00 per hour for time billed in 2022; $420.00 per hour for time billed in 2023; $480.00 per hour for time billed in 2024; and $510.00 per hour for time billed in 2025. Interim Mot. at 3. The proposed 2022-23 rates are reasonable and consistent with prior determinations, and will therefore be adopted herein. In other Vaccine Program matters, however, Ms. Widman has been reimbursed $450.00 per hour for work performed in 2024, and $480.00 per hour for work performed in 2025. *See Fernandez v. Sec'y of Health & Human Servs.*, No. 22-719V, 2025 WL 985152, at *2 (Fed. Cl. Spec. Mstr. Feb. 26, 2025); *Archer v. Sec'y of Health & Human Servs.*, No. 23-1907V, 2025 WL 3679027, at *2 (Fed. Cl. Spec. Mstr. Nov. 17, 2025); *Vacca v. Sec'y of Health & Human Servs.*, No. 23-1883V, 2025 WL 3681315, at *2 (Fed. Cl. Spec. Mstr. Nov. 17, 2025)

There is a comparable discrepancy between the rate at which Dr. Rodriguez has been reimbursed in other matters (i.e. $547.00 per hour for work performed in 2025) and the rate sought herein ($563 per hour). Final Mot. at 4; *see, e.g.*, *Coriale v. Sec'y of Health & Human Servs.*, No. 24-0328V, 2026 WL 473150, at *1 (Fed. Cl. Spec. Mstr. Jan. 16, 2026); *Argueta v. Sec'y of Health & Human Servs.*, No. 24-0072V, 2026 WL 496801, at *2 (Fed. Cl. Spec. Mstr. Jan. 20, 2026).

I find no reason to deviate from those prior determinations, and it otherwise is not the practice of OSM to adjust prior rate determinations upward in subsequent cases. *See Jefferson* v. *Sec'y of Health & Human Servs*., No. 19-1882V, 2023 WL 387051 (Fed. Cl. Spec. Mstr. Jan. 9, 2023). Accordingly, I hereby reduce both Attorney's rates to be consistent with the aforementioned decisions. Application of those reduced rates results in an overall reduction of $1,344.70.[3] No adjustments are made to time billed in the matter, however. The total amount of

[3] This amount consists of reducing Ms. Widman's and Dr. Rodriguez's hourly rates. For Ms. Widman, the reduction is calculated as follows: (($480 - $450 = $30) x 32.3 hours billed in 2024) + (($510 - $480 = $30) x 5.75 hours billed in 2025) = $1,141.50 reduction. For Dr. Rodriguez, the reduction is calculated as follows: ($563 - $547 = $16) x 12.7 hours billed in 2025) = $203.20 reduction.

fees to be awarded is **$39,782.40**, comprising $31,827.50 awarded for Ms. Widman's fees, plus $7,954.90 awarded for Dr. Rodriguez's fees.[4]

## LITIGATION COSTS

Petitioner has provided supporting documentation for all claimed costs. Interim Mot. at 3-49 (invoices and costs of Widman Law Firm, LLC, and Petitioner's costs); Exhibit 146 (ECF No. 62-2) (invoices and costs of Siri & Glimstad, LLP). Respondent offered no specific objection to the rates or amounts sought. While I generally find the costs reasonable and adequately documented (e.g. the filing fee, retainer fees, and costs associated with obtaining medical records), modest reductions are warranted with respect to the costs associated with Omid Akbari, Ph.D., a professor of Medicine, and Allergy and Immunology, as well as those associated with Adrien Eshraghi, MD, MSc, FACS, a professor of Biomedical Engineering, Neurological Surgery, and Otolaryngology, Head and Neck Surgery. *See* Interim Mot. at 44-49.

*Dr. Akbari*

Petitioner seeks reimbursement for Dr. Akbari's work at an hourly rate of $550. Interim Mot. at 44-46. Dr. Akbari, however, has repeatedly been awarded $500 per hour for his work in the Vaccine Program. *E.g.*, *Jenkins v. Sec'y of Health & Human Servs.*, No. 18-1946V, 2025 WL 2218830, at *6 (Fed. Cl. Spec. Mstr. July 11, 2025) (special master finding an hourly rate of $500 to be appropriate given Dr. Akbari's experience and credentials); *Cogan v. Sec'y of Health & Human Servs.*, No. 21-1847V, 2025 WL 2505545, at *5 (Fed. Cl. Spec. Mstr. July 24, 2025) (special master listing prior cases in which Dr. Akbari has been awarded an hourly rate of $500 in the Vaccine Program and subsequently reducing his hourly rate to this amount); *Ampofo-Addo v. Sec'y of Health & Human Servs.*, No. 21-1231V, 2025 WL 4063222, at *3 (Fed. Cl. Spec. Mstr. Dec. 17, 2025); *Miller v. Sec'y of Health & Hum. Servs.*, No. 19-985, 2026 WL 1906345, at *3 (Fed. Cl. Spec. Mstr. June 1, 2026).

While I am not averse to awarding Dr. Akbari a higher hourly rate in future cases, the work he performed on this matter occurred in a context in which he more typically received the slightly lesser sum, and Petitioner has not provided evidence sufficient to establish that a higher rate is reasonable here. Accordingly, the rate to be awarded herein will be reduced to $500.00 per hour.

A further reduction in the hours billed is also warranted. Dr. Akbari logged 48.8 hours in this matter, some of which were spent downloading, highlighting, and formatting references, or in preparing his billing statement.[5] Interim Mot. at 44-46. Review of the billing records and his expert

---

[4] ($32,969.00 + $8,158.10) - $1,344.70 reduction = $39,782.40.

[5] Dr. Akbari logged approximately 5 hours for administrative tasks. Interim Mot. at 44-45.

report provide sufficient information to conclude that the full amount requested is not reasonable. *See* Exhibit 78 (ECF No. 38) (expert report by Dr. Akbari).

Substantial portions of Dr. Akbari's report are reproduced verbatim or nearly verbatim from a report he prepared in *Jenkins v. Sec'y of Health & Human Servs.*, No. 18-1946V, 2026 WL 459032 (Fed. Cl. Spec. Mstr. Jan. 14, 2026), a case that likewise involved an influenza vaccine and alleged tinnitus, among other issues.[6] Although portions of the present report are necessarily case-specific, including its discussion of Petitioner's medical history,[7] other portions appear generally unchanged. *Compare* Exhibit 22, filed May 27, 2021 (ECF No. 43-1) at 1-3 & 7-14 (portions of Dr. Akbari's expert report describing his qualifications and explaining general immunological concepts), *in Jenkins*, 2026 WL 459032, *with* Exhibit 78 at 1-3, 8-10, 13-15, & 22-23 (discussing the same).

Additionally, a majority of the items of medical literature cited in the present report was also cited in *Jenkins*. *Compare* Exhibit 22, filed May 27, 2021 (ECF No. 43-1) at 16-18 (listing references), *in Jenkins*, 2026 WL 459032, *with* Exhibit 78 at 25-28 (listing 48 references where 37 of them were also cited in Dr. Akbari's expert report in *Jenkins*.) Thus, much of that literature had already been identified and reviewed in connection with his earlier report.[8]

Experts may well reasonably rely on their own prior Vaccine Program work, or employ previously-developed explanations of scientific concepts. But the hours requested must still reflect the work done in the *case at hand*. Where substantial portions of a report have already been drafted, and much of the supporting literature has already been identified and reviewed, the billing records should permit a determination that the time charged for additional research, review, drafting, and editing was reasonably necessary. Here, they do not adequately explain why full compensation is warranted for hours spent producing material substantially duplicative of Dr. Akbari's prior work or reviewing literature he had previously reviewed in preparing that work.

This concern is consistent with prior decisions reducing Dr. Akbari's compensation for inadequately substantiated billing. *See,* e.g., *Jenkins*, 2025 WL 2218830, at *6-8 (reducing Dr. Akbari's requested time by 20% based on excessive billing, including substantial time devoted to literature review and report preparation); *Cogan*, 2025 WL 2505545, at *6 (finding a 20% reduction appropriate to account for excessive billing related to review of medical literature and for the billing of administrative tasks); *Ampofo-Addo*, 2025 WL 4063222, at *4 (applying a 20%

---

[6] Dr. Akbari also logged approximately 6 hours for drafting his expert report. Interim Mot. at 44-45.

[7] The subsection titled "Brief Medical History," which summarizes the medical records reviewed, comprises approximately 2 pages of the 28-page-long report. Exhibit 78 at 3-5.

[8] Dr. Akbari logged approximately 15 hours for searching and reviewing literature. Interim Mot. at 44-45.

reduction based on administrative tasks, extensive literature review, and excessive overall hours); *Miller*, 2026 WL 1906345, at *4-5 (reducing Dr. Akbari's requested time by 40% based on administrative tasks, excessive literature review, and the nature of the resulting report).

In light of the substantial overlap with Dr. Akbari's prior work, the billing for repeated use of previously reviewed literature, and the lack of billing detail sufficient to justify the full amount requested, I find that a reduction of 20% is reasonable. Petitioner is thus awarded **$19,520.00** for Dr. Akbari's expert fees (not including his retainer fee), reflecting $26,840.00 requested for expert fees,[9] less $2,440.00 owing to his reduced hourly rate,[10] and then less $4,880.00 resulting from the overall percentage reduction.[11]

*Dr. Eshraghi*

Petitioner seeks reimbursement for the report prepared by Dr. Eshraghi and filed on July 29, 2024. *See* Exhibit 27 (ECF No. 35) (Dr. Eshraghi's expert report). Dr. Eshraghi received a check from Widman Law Firm, LLC, dated March 22, 2024, for his retainer fee of $5,000.00, and billed the firm an additional $25,905.00[12] for work writing it, for a total requested cost of $30,905.00. Interim Mot. at 26 & 47-49.

A portion of Dr. Eshraghi's report, however, substantially tracks language from a prior Vaccine Program decision, which was informed by a report filed by an entirely *different* expert. *Compare Madigan v. Sec'y of Health & Human Servs.*, No. 14-1187V, 2021 WL 3046614, at *12-13 (Fed. Cl. Spec. Mstr. June 25, 2021) (special master discussing *Althen* prong one), *with* Exhibit 27 at 19-21 (Dr. Eshraghi providing a medical theory of causation). My concern about this similarity is heightened by the fact that such issues were previously raised in another matter involving Dr. Eshraghi. Scheduling Order, issued Mar. 22, 2024 (ECF No. 33) at 1-2, *in Mayo* v. *Sec'y of Health & Human Servs.*, No. 22-1421V, 2026 WL 1998853 (Fed. Cl. Spec. Mstr. May 28, 2026) (special master observing that Dr. Eshraghi's report did not acknowledge either the *Madigan* ruling—or the expert whose opinions informed that analysis—and indicating that Dr. Eshraghi's report likely would not be credited); *see also Mayo v. Sec'y of Health & Human Servs.*, No. 22-1421V, 2025 WL 707854, at *1 (Fed. Cl. Spec. Mstr. Feb. 6, 2025) (special master noting

[9] ($5,000.00 (retainer fee) + $26,840.00 (expert fees)) = $31,840.00 total costs associated with Dr. Akbari's involvement in this case. *See* Interim Mot. at 4. It appears that Petitioner paid the retainer fee and not the expert fees in this matter. As the retainer fee is generally reasonable, it is not included in total being reduced here.

[10] The reduction is calculated as follows: ($550 - $500 = $50) x 48.8 hours billed = $2,440.00 reduction.

[11] The reduction is calculated as follows: ($26,840.00 - $2,440.00 = $24,400) x 20% reduction = $4,880.00 reduction.

[12] Dr. Eshraghi billed 47.1 hours at an hourly rate of $550.

that costs associated with Dr. Eshraghi had been omitted from petitioner's attorney's fees and costs application).

Both this matter and *Mayo* were ultimately resolved by stipulation, and thus the record does not permit any exact determination regarding the extent to which Dr. Eshraghi's report influenced the resolution of this claim. In addition, the apparent overlap in expert reporting appears limited to the portion addressing Petitioner's theory of causation, rather than the report as a whole.

Nevertheless, the reasonableness of the costs associated with this particular component of work is at issue. *See Raymo v. Sec'y of Health & Human Servs.*, No. 11-0654V, 2014 WL 1092274, at *13 (Fed. Cl. Spec. Mstr. Feb. 24, 2014) (expressing concern where an expert presented another expert's work product as his own); *Raymo v. Sec'y of Health & Hum. Servs.*, 129 Fed. Cl. 691, 705 (2016) (finding no abuse of discretion where expert costs were denied after the special master found the expert's report had been plagiarized and did not rely on the expert's opinion). Proper attribution enables the factfinder (and the parties) to evaluate an expert's case-specific analysis. Experts who submit reports in the Vaccine Program must therefore take care to identify the sources on which they rely. And experts should not be compensated handsomely—if at all—if their "opinion" simply copies (verbatim or otherwise) someone else's work.

Dr. Eshraghi indicated that he "excluded" hours from his invoice that duplicated his efforts related to previous reports and that repeated references. In the same invoice, however, he logged 2.3 hours partly spent reviewing "cytokines and NF kβ in stress response theory (Masuda et al 2012)"—matters discussed in both *Madigan* and *Mayo*. Interim Mot. at 48. Dr. Eshraghi also billed for 3.9 hours spent drafting the portion of his report that contains the language at issue here. *Id*. Accordingly, I disallow reimbursement for this aspect of Dr. Eshraghi's costs, reducing the reimbursable amount by $3,410.00.[13] In future cases, claimants can expect complete disallowance for Dr. Eshraghi's work if he again borrows portions of his written report from other cases or experts, and then fails to adequately credit his sources and to provide sufficient billing details.

Petitioner is thus awarded **$22,495.00** for Dr. Eshraghi's expert fees (not including his retainer fee), reflecting $25,905.00 requested for expert fees,[14] less $3,410.00 owing to his reduced time.

---

[13] ((2.3 hours billed by Dr. Eshraghi + 3.9 additional hours billed by Dr. Eshraghi) x $550.00) = $3,410.00 reduction.

[14] ($5,000.00 (retainer fee) + $ 25,905.00 (expert fees)) = $30,905.00 total costs associated with Dr. Eshraghi's involvement in this case. *See* Interim Mot. at 4. It appears that Petitioner paid the retainer fee and not the expert fees in this matter. As the retainer fee is generally reasonable, it is not included in total being reduced here.

*Summary of Litigation Costs*

After the reductions in expert fees are applied, and because all other requested costs are reasonable and adequately documented, Petitioner is awarded costs in the total amount of **$53,452.50**, consisting of $42,168.95 in costs incurred while Ms. Widman was lead attorney, plus $11,233.36 of Petitioner's costs, plus $50.19 of Dr. Rodriguez's costs.

## CONCLUSION

The Vaccine Act permits an award of reasonable attorney's fees and costs for successful claimants. Section 15(e). Accordingly, I hereby GRANT, in part, Petitioner's Fees Motions. Petitioner and her counsel are awarded the total amount of **$93,234.90**[15] as follows:

**Ms. Phyllis Widman, Esq.**:

| | |
|---|---|
| Requested Attorney's Fees: | $32,969.00 |
| Reduction of Attorney's Fees: | - $ 1,141.50 |
| Awarded Attorney's Fees: | $31,827.50 |
| | |
| Requested Attorney's Costs: | $52,898.95 |
| Reduction of Attorney's Costs: | - $10,730.00 |
| Awarded Attorney's Costs: | $42,168.95 |
| | |
| Total Awarded Attorney's Fees and Costs: | **$73,996.45** |

**Petitioner**:

| | |
|---|---|
| Requested Petitioner's Costs: | $11,233.36 |
| Total Awarded Petitioner's Costs: | **$11,233.36** |

**Dr. Ramon Rodriguez, Esq.**:

| | |
|---|---|
| Requested Attorney's Fees: | $8,158.10 |
| Reduction of Attorney's Fees: | - $203.20 |
| Awarded Attorney's Fees: | $7,954.90 |

[15] This amount is intended to cover all legal expenses incurred in this matter. This award encompasses all charges by the attorney against a client, "advanced costs" as well as fees for legal services rendered. Furthermore, § 15(e)(3) prevents an attorney from charging or collecting fees (including costs) that would be in addition to the amount awarded herein. *See generally Beck v. Sec'y of Health & Human Servs., 924 F.2d 1029 (Fed. Cir.1991).*

| | |
|---|---|
| Requested Attorney's Costs: | $50.19 |
| Awarded Attorney's Costs: | $50.19 |
| Total Awarded Attorney's Fees and Costs: | **$8,005.09**. |

**Petitioner is awarded attorney's fees and costs in the total amount of $93,234.90 (representing $73,996.45 for Ms. Phyllis Widman's fees and costs, $11,233.36 for Petitioner's personally incurred costs, and $8,005.09 for Dr. Ramon Rodriguez's fees and costs) to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of this Decision.[16]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

[16] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.